<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFERY RICHARDSON, | |
| Petitioner, | Case No. 2:21-cv-12993 (BRM) |
| v. | **OPINION** |
| ROBERT CHETIRKIN, *et al.*, | |
| Respondents. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is the petition for a writ of habeas corpus ("Petition") of Petitioner Jeffery Richardson ("Petitioner") brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the petition (ECF No. 5), and Petitioner filed a reply (ECF No. 6). For the reasons set forth below, Petitioner's habeas petition is **DENIED**, and no certificate of appealability shall issue.

**I. BACKGROUND**

The New Jersey Superior Court, Appellate Division provided the following factual summary on direct appeal:[1]

> On July 21, 2011, at approximately 5:20 p.m., Newark Police received a 9-1-1 call from an unidentified woman, reporting armed men, wearing gloves, in a red vehicle in the area of 600 Irvine Turner Boulevard. Detective Jimmy Rios and Officer Steven Maresca responded to the scene in separate police vehicles. Detective Rios saw a red Ford Taurus with three occupants and noticed the driver

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

was wearing gloves. After making a K-turn, he pulled his patrol car behind the Taurus, which immediately sped off.

After a car chase, involving the two police vehicles and the suspects, the occupants of the vehicle "bailed out," exiting the Taurus while it was still moving. The Taurus struck a parked car and a tree, as the occupants fled on foot. Detective Rios radioed dispatch, reported the fleeing suspects, and provided their descriptions and the direction each fled. He requested back-up and positioned his vehicle to establish a perimeter to apprehend the suspects.

Detective Rios saw the rear-seat passenger and began to pursue him on foot. He trapped the suspect in the rear yards of the 900 block of Belmont Terrace. He arrested the suspect, who was later identified as co-defendant Jeffery.

Back-up officers, Detective Kevin Wright and Patrolman Walter Melvin, arrived at the scene within two minutes and participated in the search for the other two suspects. Detective Wright spotted a black male "emerge from the side of one house and run across the street into an alleyway of another house." The officers pursued the man into an alleyway near Hawthorne Avenue and arrested him as he attempted to hide behind bushes. This suspect was identified by Detective Rios and Officer Maresca as the driver of the Taurus, was determined to be Jeffery's brother, Colby.

Examining the 1998 Taurus, police noted its ignition was damaged, and they found a .45 caliber handgun, a rifle, a high capacity magazine, and a screwdriver. Police also recovered gloves, bandanas, cellphones, and a cap at the scene.

At trial, Detective Antonio Badim, the State's ballistics and firearms expert, testified both guns were operable and their serial numbers were obliterated. Robert Irizarry, the previous owner of the Taurus, also testified. Five months earlier, in February 2011, he traded the Taurus for a different car with C & J Auto Sales.

Other witnesses for the State testifying during the nine-day trial included the dispatch officer, the 9-1-1 operator, and forensic scientists from the State DNA laboratory, who linked Colby to a bandana and Jeffery to a glove recovered at the scene. Also admitted were various documents including transcripts of the 9-1-1 call and

radio dispatches, maps, photographs of the crime crash scene, the damaged Taurus, and its contents.

Co-defendants presented an expert forensic scientist, who challenged the "outdated" methods and misleading conclusion of a DNA match drawn by the State's DNA experts. Additionally, each defendant testified on his own behalf.

Colby testified he worked as a driver for his brother's roadside assistance company, which responded to service calls for customers of companies such as AAA and All America. On July 21, 2011, at approximately 3 p.m., Jeffery arrived in a company van to take Colby to work. Colby was to start work at 5 p.m., when Jeffery's shift ended. Sometime after 4 p.m., the van overheated so Jeffery took it for repair at a local mechanic shop. While the two waited, they walked to a nearby neighborhood near Hawthorne Avenue because Colby wanted to buy marijuana.

At some point, Jeffery separated from Colby because he desired to purchase Percocet. After his transaction was completed, Colby emerged from an alleyway and saw police. He became nervous, as he just purchased marijuana, so he ran. A police officer, searching on foot, saw Colby hiding behind a bush and arrested him. Colby stated the officer who placed him in handcuffs hit him on the side of the head with his gun. Also he admitted he tossed the marijuana during the chase and lost his bandana. Colby denied he was driving a red Ford Taurus or that he possessed guns.

Jeffery's testimony mirrored his brother's, as he explained how he picked up Colby from East Orange to go to work in the roadside assistance business, and the van overheated. The two began walking, then separated to purchase drugs. Jeffery testified as he emerged from where he purchased the painkillers, and as he walked on the street, a police car pulled alongside of him. Believing the police watched the drug transaction, he turned and ran. He tossed the purchased Percocet during the foot chase and lost his work gloves. Jeffery hid from police for several minutes, but ultimately was cornered and arrested. Jeffery denied owning or using a Ford Taurus, or possessing weapons.

(ECF No. 5-7 at 6-10, *State v. Richardson*, Nos A-4021-14, A-4026-14 (App. Div. June 23, 2017)

(slip op. at 5-9).)

3

The Essex County Grand Jury returned Indictment No. 12-04-1144, charging Petitioner with third-degree receipt of stolen property, N.J.S.A. § 2C:20-7 (count two); second-degree unlawful possession of a handgun, N.J.S.A. § 2C:39-5(b) (count three); fourth-degree possession of a defaced firearm, N.J.S.A. § 2C:39-3(d) (count four); fourth-degree possession of hollow-point bullets, N.J.S.A. § 2C:39-3(f) (counts five and seven); second-degree possession of an assault firearm, N.J.S.A. § 2C:39-5(f) (count six); fourth-degree possession of a certain weapon, a large capacity ammunition magazine, N.J.S.A. § 2C:39-3(j) (count eight); and fourth-degree resisting arrest, N.J.S.A. § 2C:29-2(a) (count ten). Co-defendant Colby Richardson ("Colby") was charged with these offenses, as well as second-degree eluding, N.J.S.A. § 2C:29-2(b) (count one). (ECF No. 5-5.)

On September 9, 2014, Petitioner and his co-defendant's jury trial began before the Honorable Alfonse J. Cifelli, J.S.C. (*See* ECF Nos. 5-24 to 5-37.) On September 24, 2014, the jury found Petitioner guilty on counts two, three, four, six, seven, and eight, and not guilty on count five. (*See* ECF No. 5-37.) On January 26, 2015, Petitioner was sentenced to five-years of imprisonment on count two; fifteen-years of imprisonment, with seven-and-one-half-years of parole ineligibility on count three, to run consecutively to count two; and eighteen-months of imprisonment, on count four, to run consecutively to counts two and three. On count six, Petitioner was sentenced to ten-years imprisonment, with five-years of parole ineligibility, to run consecutively to counts two, three, and four. In addition, the court imposed eighteen-month terms of imprisonment on counts seven, eight, and ten to run concurrently with counts two, three, and four. The total term was thirty-one-years and six-months imprisonment, with twelve-years and six-months of parole ineligibility. (*See* ECF No. 5-38.)

Petitioner filed a Notice of Appeal with the Appellate Division. On June 23, 2017, the Appellate Division affirmed Petitioner's convictions. (ECF No. 5-7, *Richardson*, No. A-4021-14T2.) On December 8, 2017, the New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 5-8, *State v. Richardson*, 231 N.J. 522, 177 A.3d 107 (Table) (2017).)

Petitioner filed a post-conviction relief ("PCR") petition. On March 8, 2019, the Honorable Marysol Rosero, J.S.C., heard oral argument and denied Petitioner's PCR petition by way of oral opinion. (*See* ECF No. 5-40.) On June 25, 2019, Petitioner filed a Notice of Appeal before the Superior Court, Appellate Division. (ECF No. 5-12.) On December 3, 2020, the Appellate Division affirmed the denial of Petitioner's PCR petition. (ECF No. 5-13, *State v. Richardson*, No. A-4570-18T1, 2020 WL 7066927 (N.J. Super. Ct. App. Div. Dec. 3, 2019).) On May 21, 2021, the New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 5-14, *State v. Richardson*, 246 N.J. 322, 250 A.3d 1133 (Table) (2021).)

Petitioner filed his instant habeas petition with this Court, which was signed on June 21, 2021. (ECF No. 1.) Petitioner argues that "the imposition of consecutive sentences for multiple weapons simultaneously possessed is improper in light of the principles of lenity and merger." (*Id.* at 10.) Respondents filed an answer asserting Petitioner's claim is procedurally barred and non-cognizable. (ECF No. 5.)

## II. LEGAL STANDARD

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA), 28 U.S.C. § 2254 provides the district court "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim

5

presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be

6

no reasonable dispute that they were wrong." *Woods*, 125 S. Ct. at 1376. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App' x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996); *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of

"cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

## III. DISCUSSION

Petitioner argues that the trial court erred in sentencing insofar as his unlawful possession of a handgun (count three), possession of a defaced firearm (count four), and possession of an assault firearm (count six) weapons offenses should have merged for sentencing purposes. (*See* ECF No. 1.) Plaintiff argues the imposition of consecutive sentences on those weapons offenses was improper. (*Id.*)

Possible errors in sentencing by the state court are not cognizable on federal habeas review, so long as the sentence is within the statutory limit, because sentencing is a matter of state law. *See Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 43 (3d Cir. 1984); *U.S. ex rel. Jackson v. Myers*, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (noting that "the severity of a defendant's sentence alone constitutes no ground for [federal habeas] relief," "so long as the [sentence] is within statutory limits"); *Smith v. Kerestes*, No. 08-cv-0061, 2009 WL 1676136, at *16 (E.D. Pa. June 15, 2009), *aff'd*, 414 F. App'x 509 (3d Cir. 2011) ("[T]he Third Circuit has held that absent a Constitutional violation, a federal court has no power to review a sentence in a habeas corpus proceeding unless it exceeds the statutory limits."). Here, Petitioner does not allege that the sentence imposed exceeded statutory limits or that the court's sentence was arbitrary. Therefore, to the extent the claim is construed solely as a claim of sentencing error, it is non-cognizable.

The Court has thoroughly reviewed the state court briefings and decisions and it does not appear that Petitioner raised the instant claim as a federal constitutional claim before the state court, rather Petitioner raised a state law merger claim. (*See* ECF Nos. 5-9, 5-10, 5-13, 5-15, 5-17, 5-40.) Here, Petitioner argues his sentence violates the Fifth Amendment Double Jeopardy Clause.

(*See* ECF No. 1 at 32-41.) However, Petitioner's state law merger claim may implicate double jeopardy. The Third Circuit, in considering Pennsylvania state law, has held that when a petitioner raises a claim to the state courts that the trial court erred in not merging counts, such a claim places the state courts on adequate notice that he is making a federal double jeopardy argument, and therefore such a claim is properly exhausted for purposes of federal habeas review. *Wilkerson v. Sup't Fayette SCI*, 871 F.3d 221, 229 (3d Cir. 2017). The Third Circuit acknowledged that merger claims and double jeopardy claims are different, explaining that "merger is a challenge to a defendant's sentence, while double jeopardy is a challenge to the underlying conviction." *Id.* at 231 n.7 (citations omitted). However, the Third Circuit concluded that the different claims and remedies are "immaterial to whether the nature of the violation claimed put the state court 'on notice that a federal claim [was] being asserted.'" *Id.* (quoting *McCandless*, 172 F.3d at 261). In *Wilkerson*, the Third Circuit considered Pennsylvania law and found that the Pennsylvania Supreme Court had imported the federal double jeopardy test into its merger doctrine. *Id.* at 230. Here, N.J.S.A. 2C:1-8(a) governs merger of offenses and "focus[es on] whether the offense charged and the related offense share a common factual nucleus." *State v. Thomas*, 187 N.J. 119, 130 (2006). The New Jersey Supreme Court has noted that Courts merge convictions where multiple counts otherwise call for "*double* punishment for a single wrongdoing." *State v. Diaz*, 144 N.J. 628, 637 (1996) (emphasis added). For the purposes of this matter, the Court will assume Petitioner's merger claim can be read to assert a double jeopardy violation and will review the merits of the claim.

   The Double Jeopardy Clause of the Fifth Amendment provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Fifth Amendment "is applicable to the States through the Fourteenth Amendment." *Benton v.*

*Maryland*, 395 U.S. 784, 787 (1969). The Clause protects against, among other things, "'multiple punishments for the same offense' imposed in a single proceeding." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). "To assess whether two crimes constitute the 'same offense' for double jeopardy purposes," courts use the test set forth by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). *Wilkerson*, 871 F.3d at 230. "That is, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *Id.* (quoting *Blockburger*, 284 U.S. at 304). "If this test yields 'only one' offense, 'cumulative sentences are not permitted, unless elsewhere specially authorized by Congress.'" *Id.* (quoting *Whalen v. United States*, 445 U.S. 684, 693 (1980)).

The Appellate Division addressed Plaintiff's merger claim on collateral appeal.

> "We follow a 'flexible approach' in merger issues that 'requires us to focus on the "elements of the crimes and the Legislature's intent in creating them," and on "the specific facts of each case."'" *State v. Miller*, 237 N.J. 15, 32 (2019) (quoting *State v. Brown*, 138 N.J. 481, 561 (1994) (citations omitted)). The overriding principle of our merger analysis "is that a defendant who has committed one offense 'cannot be punished as if for two.'" *Ibid.* (quoting *Brown*, 138 N.J. at 561 (citations omitted)). This approach requires
>
>> analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
>
> [*Id.* at 33 (quoting *State v. Davis*, 68 N.J. 69, 81 (1975)).]
>
> Moreover, "merger issues implicate a defendant's substantive state constitutional rights that are rooted in principles of double jeopardy,

10

due process, or some other legal tenet. The purpose of merger is to avoid double punishment for a single wrongdoing." *State v. Hill*, 182 N.J. 532, 542 (2005) (quoting *State v. Diaz*, 144 N.J. 628, 637-38 (1996) (citations omitted)). However, "the Legislature may fractionalize a single criminal episode into separate offenses when the Legislature intends them to be punished separately and when the fractionalization does not offend constitutional principles." *Miller*, 237 N.J. at 33 (quoting *State v. Mirault*, 92 N.J. 492, 504 (1983)).

Defendant argues that the only evidence presented by the State was that a detective saw him in the Taurus, which was believed to have been stolen, and two weapons were found in the vehicle after he was apprehended. He argues that it was inappropriate to charge and convict him of four separate offenses where each charged offense was part of the same criminal episode. We disagree.

In our opinion on defendant's appeal, we rejected his contention that the trial judge erred by imposing consecutive sentences on counts two, three, four, and six. *Richardson I*, slip op. at 46-47. We stated that

> the judge rejected the argument [that] these crimes constituted a single event. He found the identified crimes were "separate and apart." Noting that there are no "free crimes," the judge found it would be "grossly unjust" were he to ignore the necessity to "provide for the safety of the general public" and imposed a consequence for the distinct offenses committed. The offenses of receipt of a stolen automobile, unlawful possession of a handgun, possession of a defaced firearm, and possession of an assault rifle occurred at separate times, and were not a single transaction, but each offense had distinct, independent objectives and involved separate threats of violence.

[*Id.* at 46.]

Our discussion of defendant's contention regarding the imposition of consecutive sentences applies to defendant's merger argument.

In support of his contention that, at the very least, the weapons offenses should merge, defendant relies upon *State v. Harper*, 153 N.J. Super. 86 (App. Div. 1977). In that case, the defendant was charged under N.J.S.A. 2A:151-8 with unlawful possession of a loaded revolver, brass knuckles, and a bludgeon. *Id.* at 87-88. The

11

> statute made it unlawful for any person, who had been convicted of certain crimes, to possess any firearms or dangerous instruments. *Id.* at 88.
>
> We held that the three counts of the indictment should merge. *Id.* at 90. We noted that the "weapons were found in the same place, the bedroom dresser, and at the same time, upon execution of the search warrant." *Ibid.* However, in *Harper*, the defendant was charged with three offenses under the same statute. *Id.* at 87-88.
>
> Here, defendant was charged with unlawful possession of a handgun under N.J.S.A. 2C:39-5(b), possession of a defaced firearm under N.J.S.A. 2C:39-3(d) (count four); and possession of an assault firearm under N.J.S.A. 2C:39-5(f). These are separate offenses in the Code of Criminal Justice, which indicates the Legislature intended that these three offenses would be punished separately. *Miller*, 237 N.J. at 33 (citing *Mirault*, 92 N.J. at 504).
>
> Defendant also relies upon *State v. Lattimore*, 197 N.J. Super. 197 (App. Div. 1984). There, the defendants were found guilty "of six [weapons] offenses, two involving a sawed-off shotgun and four involving two handguns." *Id.* at 206. We held the convictions for possession of the handguns without a permit to carry should merge. *Id.* at 214-15.
>
> We stated that "[t]he gravamen of the offense [was] the failure to have a permit" and if "a defendant had such a permit it would cover all handguns owned by him but not necessarily all handguns possessed by him . . . ." *Id.* at 215. We noted that there was no evidence as to the ownership of the guns and the codefendants had constructive possession of the weapons. *Ibid.*
>
> Defendant's reliance upon *Lattimore* is misplaced. In that case, the merged offenses pertained to the same type of weapon, namely handguns. Moreover, as we explained, the "gravamen of the offense [was] the failure to have a permit," and one permit would have covered all handguns owned by the person who possessed them. *Ibid.* Here, defendant has been found guilty of possessing a handgun, a defaced firearm, and an assault weapon.

(ECF No. 5-13, *Richardson*, 2020 WL 7066927 *3-4.)

The Appellate Division's conclusion was neither contrary to, nor an unreasonable application of Supreme court precedent set forth in *Blockburger*. *Blockburger* requires courts to

consider whether "each provision requires proof of a fact which the other does not." 284 U.S. at 304. The Appellate Division noted that New Jersey law requires the court to consider "whether the proof submitted as to one count of the indictment would be necessary ingredient to a conviction under another count." (ECF No. 5-13, *Richardson*, 2020 WL 7066927 *3, citing *Miller*, 237 N.J. at 33.) The Appellate Division found that each of Petitioner's weapons offenses were not a single transaction, but had distinct, independent objectives and involved separate threats of violence. (*Id.* at *4.) The Appellate Division also found that Petitioner was charged under three separate offenses of the Code of Criminal Justice, which the Legislature intended would be punished separately. (*Id.*)

Although all three sentences challenged by Petitioner involved weapons offenses, that does not mean that under the standards expressed above, they should be automatically merged. While all three weapons offenses require knowing possession, the offenses have distinct elements. Unlawful possession of a handgun requires the State to prove Petitioner did not have a permit to possess the weapon, N.J.S.A. 2C:39-5(b), whereas possession of a defaced firearm requires the State to prove that the firearm was defaced, N.J.S.A. 2C:39-3(d). An individual who has a permit to carry a handgun would not violate N.J.S.A. 2C:39-5(b) but if he later altered the serial numbers of that handgun, he would violate N.J.S.A. 2C:39-3(d). Unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f), requires the State to prove Petitioner did not have "license" to possess an assault firearm, whereas unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), requires the State to prove Petitioner did not have a "permit" to possess a handgun. An individual may qualify for a permit to possess a handgun but not qualify for a license to possess an assault firearm. The statutory processes of obtaining a permit and license are different. *See* N.J.S.A. 2C:39-5(b); N.J.S.A. 2C:39-5(f). The Appellate Division's finding that Petitioner was properly sentenced under three separate

offenses was neither contrary to nor an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on this claim.

### IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

### V. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus (ECF No. 1) is **DENIED**, and Petitioner's certificate of appealability is **DENIED**. An appropriate order follows.

**Date:** March 29, 2023

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**